UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ESTEBAN GARCIA and MARTHA YANET SUAREZ
DE GARCIA,

                                Plaintiffs,

                          -v-

LASALLE BANK N.A., as trustee for Merrill Lynch
Mortgage Investors Trust, Series 2006-FM1, BANK OF
AMERICA, N.A., and DOES 1–100,

                                Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1-19-17

16 Civ. 3485 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

       Plaintiffs Esteban Garcia and Martha Yanet Suarez de Garcia, proceeding *pro se*, bring this action under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), other federal statutes, and state law. They claim that defendants violated various statutes and committed forms of fraud in connection with the Garcias' mortgage and the subsequent foreclosure of their house at 167 Pelham Road in New Rochelle, New York (the "Property"). The Garcias seek actual, statutory, and punitive damages, as well as an injunction quieting title, stopping foreclosure, and awarding ownership of the Property to them, and a declaratory judgment that they own the Property free and clear of all encumbrances and that defendants do not have any enforceable interest in the Property.

       Defendants now move to dismiss. They argue, first, that the Court lacks subject matter jurisdiction, requiring dismissal under Federal Rule of Civil Procedure 12(b)(1), because the Garcias' suit is substantively an attack on a state-court judgment after foreclosure proceedings

for which there is no federal district court jurisdiction.  They separately argue that the Garcias' Complaint fails to state a claim upon which relief may be granted, requiring dismissal under Rule 12(b)(6).  For the reasons that follow, the Court grants the motion to dismiss.

## I. Background

### A. Procedural History

On May 10, 2016, the Garcias filed a complaint.  Dkt. 1 ("Complaint").  On July 8, 2016, defendants filed a motion to dismiss, Dkt. 7, which included, in support, a memorandum of law, Dkt. 9, and a Declaration of Natsayi Mawere, Dkt. 8 ("Mawere Declaration"), which attached various exhibits.

On July 26, 2016, the Court issued an order setting a schedule for the Garcias to either amend their complaint under Federal Rule of Civil Procedure 15(a)(1)(B) or file an opposition to the motion to dismiss, and gave the Garcias, as *pro se* litigants, extended time to do so.  Dkt. 12.  The Court ordered that any amended complaint or opposition to the motion to dismiss would be due on August 19, 2016.  *Id.*  On August 23, 2016, the Garcias moved for an extension to that deadline, stating that they wished to amend the complaint.  Dkt. 13.  On August 25, 2016, the Court extended the deadline to amend or oppose to September 9, 2016.  Dkt. 14.  The Garcias did not, however, at any point file an amended complaint or an opposition to the motion to dismiss.

### B. Factual Background

#### 1. The Garcias' Allegations

The Garcias' Complaint is difficult to decipher and contains conclusory allegations.  Treating the factual allegations as true in deciding a motion to dismiss, and reading the

Complaint with solicitude to the Garcias' *pro se* status, the Garcias appear to allege the following.

On February 21, 2006, the Garcias obtained a loan, secured by a mortgage on the Property.  Complaint ¶ 10.  The loan was originated by non-party Fremont Investment & Loan ("Fremont"). *Id.*  This loan was underwritten without proper due diligence by Fremont.  *Id.* ¶ 11.  This lack of due diligence contributed to Fremont qualifying the Garcias for a loan which Fremont knew or should have known that the Garcias could not have afforded or for which they did not qualify.  *Id.* ¶ 18.  Fremont used the Garcias' credit scores and their stated income in evaluating them for the loan.  *Id.*  Instead, Fremont should have used the Garcias' tax forms and properly analyzed their debt to income ratio.  *Id.* ¶¶ 11, 18.  Thus, "Fremont ignored long-standing economic principals [sic] of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product." *Id.* ¶ 18.

The Garcias allege that defendant LaSalle Bank, N.A. ("LaSalle"), was the successor in interest to Fremont and responsible for its actions and knew of and participated in Fremont's actions.  *Id.* ¶¶ 19–20.  The Garcias allege various errors in the assignment of their loan and deficiencies in various notices they allege were entitled to receive.  For example, they allege that there were no recorded assignments of their mortgage, *id.* ¶ 15, and that Fremont cannot show that it has a proper security interest in the original note and mortgage, *id.* ¶ 24.  And, they allege, the securitization of the mortgage was improperly conducted, "render[ing] invalid any security interest in the said mortgage," including because there was a "splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage," and a failure to assign and transfer the Garcia's beneficial interest in the mortgage in accordance with the Pooling and Servicing Agreement.  *Id.* ¶ 32.

The Garcias bring the following claims: (1) a violation of RESPA, on the ground that Fremont's payment of "yield spread premiums" was a proscribed "kickback" or "referral fee" under the statute, *id.* ¶¶ 39–43; (2) a violation of RESPA's fee splitting provision, on the ground that Fremont split charges between it, other defendants, and "un-named brokers," and that these "yield spread premiums" were illegal kickbacks, *id.* ¶¶ 44–48; (3) a violation of TILA, on the ground that Fremont and LaSalle did not provide required disclosures to the Garcias, and that their loan is therefore subject to a right of rescission under TILA, *id.* ¶¶ 49–58; (4) for breach of contract, on the ground that defendants breached the covenant of good faith when they "inaccurately and intentionally completed the Federal Loan Application for the Plaintiffs" because "the Plaintiff's earned income was overstated on the Federal Loan Application," improperly qualifying them for a loan they could not afford, *id.* ¶¶ 59–62; (5) for breach of fiduciary duty, on the ground that defendants "conceal[ed], receiv[ed] and/or actually pa[id], the illegal and improper 'kickbacks' and 'referral fees,'" and "fail[ed] to properly disclose other material facts as required," *id.* ¶¶ 63–68; (6) for conspiracy, on the ground that defendants "agreed amongst themselves to take illegal and improper actions," *id.* ¶¶ 69–72; (7) to quiet title, on the ground that defendants "by fraud received an [unequitable] deed of trust to secure debt to the property for a loan that Plaintiff should not have given or been allowed to take," and requesting "that the Court invalidate the deed of trust on the property," *id.* ¶¶ 73–78; and (8) for declaratory relief, on the ground that the defendants did "not have a valid secured interest in the Property sufficient to foreclose against the Property" and "do not have the right to foreclose on the Property" because they "did not properly comply with the terms of Defendants' own securitization requirements (contained in the [Pooling and Servicing Agreement]) and falsely or fraudulently prepared documents required for Defendants . . . to foreclose as a calculated and

fraudulent business practice," and requesting that "this Court find that Defendants had/have no right to foreclosure against the Property," *id.* ¶¶ 79–86.

The Garcias seek damages, statutory damages, punitive damages, attorney's fees and costs, and ask the Court to "award [them] exclusive possession of the Property," "[d]etermine that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property," "[d]eclare that Defendants do[] not have an enforceable secured or unsecured claim against the Property," and "[d]eclare that [they] own[] the Property free and clear of all encumbrances of the Defendants or anyone claiming by or through the Defendant[s]."[1]  *Id.* ¶¶ a–dd.  And, they seek "injunctive relief to stop the foreclosure."  *Id.* ¶ 9.

### 2. Cognizable Evidence as to the Garcias' Mortgage[2]

According to the cognizable materials submitted in support of the motion to dismiss, Martha Yanet Suarez de Garcia obtained a $480,000 loan from Fremont with an annual interest rate of 6.95%, which was secured by a mortgage on the Property.  The loan documents are dated February 21, 2006.  Mawere Declaration ¶ 2.  The loan was originally obtained from Fremont, and the mortgage was executed in favor of Fremont's nominee, Mortgage Electronic Registration Systems, Inc. ("MERS").  *Id.*  On June 8, 2006, the mortgage was filed in the Westchester

---

[1] The Garcias also make an utterly conclusory claim of "securities fraud" in their prayer for relief.  Complaint ¶¶ bb–dd.  Although the "Securities Act of 33" is mentioned in passing early in the Complaint, *id.* ¶ 1, the Complaint offers no factual allegations to support this claim or even that the sale or purchase of securities was involved in the consummation of the loan.  And the "deficiencies" the Complaint lists in the mortgage's "securitization process" are nothing more than conclusory allegations that do not supply factual content from which the inference of securities fraud could be drawn, Complaint ¶ 32.  The Complaint's other allegations also do not permit the inference that the elements of securities fraud are met, notwithstanding the Garcias' claims of "securitization fraud on this particular loan," *id.* ¶ 16.

[2] These materials are cognizable on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *See J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).

County Clerk's Office. *Id.* On May 27, 2008, MERS assigned the mortgage to LaSalle, as trustee for the MLMI Trust Series 2006-FM1. *Id.* ¶ 3. On June 26, 2008, the assignment was recorded in the Westchester County Clerk's Office. *Id.*

On June 2, 2008, LaSalle began foreclosure proceedings as to the Property by filing a summons and complaint in New York Supreme Court, Westchester County, against the Garcias, MERS, and other defendants. *Id.* ¶ 4. On February 2, 2009, a judgment of foreclosure and sale was entered in the foreclosure proceedings. *Id.* ¶ 6. On October 11, 2012, the Garcias appeared in the action on a limited basis, and demanded a copy of the motion for judgment of foreclosure and sale and all other papers related to the action including any notice of sale. *Id.* ¶ 5. On June 30, 2015, U.S. Bank N.A.—as trustee and successor in interest to Bank of America, N.A., which in turn was trustee and successor by merger to LaSalle—purchased the Property, at a foreclosure auction. *Id.* ¶ 7. On July 17, 2015, the Referee's Deed was filed in the Westchester County Clerk's Office. *Id.*

## II.     Standard of Review

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all the material factual allegations contained in the complaint, but a court is "not to draw inferences from the complaint favorable to plaintiffs." *See Attica Central Schools*, 386 F.3d at 110. A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *McGowan v. United States*, 825 F.3d 118, 125–26 (2d. Cir. 2016) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d. Cir. 2005)). A district court properly dismisses an action under Rule 12(b)(1)

if the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt Street Recovery Corp. v. Hallas Telecommns. S.A.R.L.*, 790 F.3d 411, 416–17 (2d. Cir. 2015) (quotation omitted).

To survive a motion to dismiss for failure to state a claim for which relief can be granted under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III. Discussion

Defendants argue that the Court lacks power to adjudicate this case because it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Defendants also argue for dismissal based on res judicata, the Garcias' lack of standing to challenge the assignment and trust documents, and for failure to state a claim. For the following reasons, the Court agrees that this action is barred by the *Rooker-Feldman* doctrine, and, alternatively, that the Garcias' federal claims fail to state a claim. As a result, the Court has no occasion to reach defendants' other arguments for dismissal.

### A. Subject Matter Jurisdiction

Federal district courts generally lack jurisdiction over suits that are appeals from judgments entered in state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (28 U.S.C. § 1257, "as long interpreted, vests authority to review a state court's judgment solely in [the Supreme Court]," while 28 U.S.C. § 1331 is a grant of original, not appellate jurisdiction).[3] A corollary to that principle is the *Rooker-Feldman* doctrine, under

---

[3] Congress may explicitly empower federal district courts to review certain state-court judgments. It has done so in limited contexts, most notably authorizing such courts to review

which "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Under the doctrine, 28 U.S.C. § 1257 prevents a federal district court from exercising subject matter jurisdiction over cases it would otherwise be possessed of jurisdiction to adjudicate, such as via § 1330 (suits against foreign states), § 1331 (federal question), or § 1332 (diversity), when the case is "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 283, 291; *see also Hoblock*, 422 F.3d at 85 ("Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions.").

There are four requirements for the *Rooker-Feldman* doctrine to apply. "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal court suits proceeding in parallel with ongoing state-court litigation." *Hoblock*, 422 F.3d at 85 (quotation marks, brackets, and citations omitted). Of these requirements, the first and fourth are procedural, and the second and third are substantive. *Id.*

Here, the first and fourth requirements—the procedural requirements—are easily satisfied. Insofar as the Complaint asks the Court to declare that defendants have no right to

---

state prisoners' habeas corpus petitions. *Exxon Mobil*, 544 U.S. at 292 n.8 (citing 28 U.S.C. § 2254).

foreclose on the Property, *see* Complaint ¶¶ 80–86, the Garcias clearly lost in state court on that point by virtue of the judgment of foreclosure entered against them and in favor of LaSalle in the state-court foreclosure proceeding, *see* Mawere Declaration ¶¶ 4–6 & Exs. 3, 5.  And as to the fourth requirement, the judgment of foreclosure was entered on February 2, 2009, Mawere Declaration ¶ 6 & Ex. 5, and the Garcias filed the Complaint in this case on May 10, 2016, over seven years later.  The state court judgment was thus rendered long before the proceedings here commenced.

The second and third requirements—the substantive requirements—are also satisfied.  These are whether the plaintiff complains of injuries caused by, and invites district court review and rejection of, a state-court judgment.  Importantly, whether an injury is caused by a state-court judgment turns on an analysis of "the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court," not "on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law)."  *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) (emphasis in original).

Here, the Garcias clearly complain of the state-court judgment of foreclosure and invite the Court to invalidate it.  They ask the Court to declare that defendants have no right to foreclose on the Property, *see* Complaint ¶¶ 80–86, even though defendants have already done so, Maware Declaration ¶¶ 4–6.  They ask the Court to "award Plaintiff exclusive possession of the Property," Complaint ¶ r, and for "injunctive relief to stop the foreclosure," *id.* ¶ 9, even though the judgment of foreclosure has been entered in state court and the property sold at the foreclosure auction, Maware Declaration ¶¶ 6–7.  Even some of the Garcias' federal claims effectively seek to repudiate the state-court judgment:  For example, the Garcias seek a declaratory judgment that they retain a right to rescind their loan under TILA, *see* Complaint

¶¶ 50–58, even though allowing rescission would be tantamount to finding that no valid mortgage existed and thus that there was no basis for foreclosure, *see Scott v. Capital One, Nat. Assocs.*, 12 Civ. 183 (ER), 2013 WL 1655992, at *3 n.3 (S.D.N.Y. Apr. 17, 2013) ("the plaintiff's claim for rescission of the loan [is] barred by the *Rooker-Feldman* doctrine because granting rescission would amount to finding that no valid mortgage existed, which would negate the foreclosure judgment") (citing *In Re Madera*, 586 F.3d 228, 232 (3d Cir. 2009)). In the same vein, the Garcias' claim that defendants fraudulently qualified them for a loan, *e.g.*, Complaint ¶¶ 18, 74–78, is a basis for their request that the Court "invalidate the deed of trust on the property," *id.* ¶ 78, would, too, negate the foreclosure judgment and subsequent sale. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars Vossbrinck's claim.").

There is, accordingly, little doubt that the purpose of the Garcias' lawsuit is to undo the foreclosure, as the Complaint in various respects complains of injuries caused by, and effectively invites the Court to invalidate, the judgment of foreclosure. *See Scott*, 2013 WL 1655992, at *3–4 (plaintiffs seeking order declaring title and transferring ownership of property back to plaintiffs, based in part on claim of improper service of requisite foreclosure notices, was barred by *Rooker-Feldman*, even though Complaint invoked TILA and RESPA); *Done v. Option One Mortg.*, 09 Civ. 4770 (JFB), 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30 2011) (although plaintiff brought claim under Fair Credit Reporting Act, among other federal statutes, claim depended on a mortgage loan being invalid, a question decided against plaintiff in state court; it was "abundantly clear . . . that plaintiff is seeking to undo the state court judgment" and to "alleg[e] injuries that occurred as a result of the judgment—specifically, the foreclosure on

plaintiff's property"); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d. Cir. 2002) ("if adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment" and thereby in violation of *Rooker-Feldman*).

Accordingly, because the Garcias complain of injuries caused by the state-court judgment of foreclosure and invite the Court to undo that judgment, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. The Complaint therefore must be dismissed.

### B. Failure to State a Claim

Even if discrete claims of the Garcias' did not implicate *Rooker-Feldman*—and all appear to do so, although their *pro se* Complaint is imprecise—their federal claims fail as a matter of law because they are time-barred.

The Garcias' first two federal claims, *see* Complaint ¶¶ 39–48, arise under RESPA's anti-kickback provision, 12 U.S.C. § 2607. As such, the Garcias were required to bring them within one year from the date of the alleged violation. 12 U.S.C. § 2614. The "kickbacks" and "yield spread premiums" that the Garcias protest necessarily occurred at the loan's origination on February 21, 2006, making this 2016 lawsuit is untimely.

The Garcias' third claim, *see* Complaint ¶¶ 49–58, alleges violations of TILA based on the defendants' ostensible failure to provide required notices during the loan's origination and closing.[4] TILA is subject to a one-year statute of limitations for claims alleging actual or statutory damages, beginning on the date of the violation's occurrence. 15 U.S.C. § 1640(e).

---

[4] Although not contained within the Complaint's third claim, the Complaint elsewhere alleges that § 1641(g) of TILA was violated by defendants' failure to record purported assignments of their mortgage within 30 days of the loan's February 21, 2006 closing. Complaint ¶ 15. Such a lapse would, at most, create liability for damages under § 1640(a). As such, it is subject to the one-year statute of limitations of § 1640(e), and therefore untimely.

The loan at issue here was originated on February 21, 2006, making the TILA claim here untimely.

Nor is the Garcias' claim for rescission under TILA timely. TILA ordinarily provides a three-day period to rescind following the consummation of the loan transaction, 15 U.S.C. § 1635(a), but extends that period to three years where the required disclosures were not provided by the lender at that time, *see* 15 U.S.C. 1635(f). After receiving a notice of rescission by the borrower, the lender has 20 days to rescind the loan, 15 U.S.C. § 1635(b); a claim that a lender failed to rescind following such a notice must be brought within one year. *See* 15 U.S.C. § 1640(e); *see also In re Residential Capital, LLC*, --- B.R. ---, 16 Civ. 1955 (PAE), 2016 WL 6996184, at *6 (S.D.N.Y. Nov. 30, 2016) ("Section 1640(e)'s one-year limitations period governing damages claims begins to run upon the lender's failure to rescind as required."); *Midouin v. Downey Sav. and Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 109 (E.D.N.Y. 2011) ("A claim for damages for failure to honor a rescission request is unquestionably subject to the statute of limitations, which requires an action for damages to be brought 'within one year from the date of the occurrence of the violation.'" (citing § 1640(e)). Any claim for rescission by the Garcias is, therefore, untimely: Even if their right to rescind was extended to three years and if they provided a timely notice of rescission to the lender within that period, then an action for damages from the lender's failure to rescind within 20 days was required to be brought within one year after the end of that 20-day period—*i.e.*, in March 2010, more than six years before the Garcias brought this action.

At its start, the Complaint lists other federal statutes and causes of action: the Home Ownership and Equity Protection Act, the 1933 Securities Act, the Wire Act, mail fraud, bank fraud, Complaint ¶ 1, and the Fair Debt Collection Practices Act, *id.* ¶ 13. But the Complaint

13

contains no concrete factual allegations supporting any such claims. To the extent the Complaint can be read even to bring claims under these statutes, the lack of factual support for such claims requires their dismissal for failure to state a claim.

The Garcias' federal claims therefore must independently be dismissed for failure to state a claim.

### C. State-Law Claims

The Garcias bring various claims under state law. Having dismissed all federal claims at the threshold, the Court declines to exercise its supplemental jurisdiction over the Garcias' state-law claims. Although a district court has discretion to retain supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), "the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Such is the case here, where the Court has no particular familiarity with this case, no discovery has occurred, and a state court would be better equipped to entertain any state-law claims that may remain available to the Garcias. Accordingly, the Court dismisses the Garcias' state-law claims, without prejudice.

### CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss all federal claims. The Court declines to exercise supplemental jurisdiction over the Garcias' state-law claims, and dismisses these without prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to the Garcias at their address of record, to terminate the motion pending at Dkt. 7, and to close this case.

SO ORDERED.

                                                        *Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 19, 2017
       New York, New York